## ALASKA S. S. CO. v. UNITED STATES.
### No. 6842.

Circuit Court of Appeals, Ninth Circuit.
Feb. 13, 1933.

Lawrence Bogle, Cassius E. Gates, Norman M. Littell, and Bogle, Bogle & Gates, all of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This action was brought in the District Court by appellant to recover the cost of transporting from Ketchikan, Alaska, to Seattle, Wash., the crew of the steamship Depere, owned and operated by appellant, which vessel, on November 15, 1929, while en route from Seattle to Ketchikan, was wrecked near Port McArthur, Alaska, where the crew went ashore. The following day, November 16, in response to radio messages from the Depere at the time of the wreck, a United States Coast Guard boat transported the crew of the Depere to Ketchikan, Alaska, where they were landed on November 17, 1929. The United States Deputy Collector of Customs at Ketchikan took charge of the crew of the Depere as destitute seamen and provided them with lodging and sustenance, as required by sections 678 and 679 of title 46, USCA, which are as follows:

"§ 678. *Subsistence to Destitute Seamen; Return to United States.* It shall be the duty of the consuls and vice consuls, from time to time, to provide for the seamen of the United States, who may be found destitute within their districts, respectively, sufficient subsistence and passages to some port in the United States, in the most reasonable manner, at the expense of the United States, subject to such instructions as the Secretary of State shall give. The seamen shall, if able, be bound to do duty on board the vessels in which they may be transported, according to their several abilities.

"§ 679. *Transportation of Destitute Seamen to United States.* All masters of vessels of the United States, and bound to some port of the same, are required to take such

destitute seamen on board their vessels, at the request of consular officers, and to transport them to the port in the United States to which such vessel may be bound on such terms, not exceeding $10 for each person for voyages of not more than thirty days, and not exceeding $20 for each person for longer voyages, as may be agreed between the master and the consular officer, when the transportation is by a sailing vessel; and said consular officer shall issue certificates for such transportation, which certificates shall be assignable for collection. If any such destitute seaman is so disabled or ill as to be unable to perform duty, the consular officer shall so certify in the certificate of transportation, and such additional compensation shall be paid as the Comptroller General of the United States shall deem proper. Every such master who refuses to receive and transport such seamen on the request or order of such consular officer shall be liable to the United States in a penalty of $100 for each seaman so refused. The certificate of any such consular officer, given under his hand and official seal, shall be presumptive evidence of such refusal in any court of law having jurisdiction for the recovery of the penalty. No master of any vessel shall, however, be obliged to take a greater number than one man to every one hundred tons burden of the vessel on any one voyage or to take any seaman having a contagious disease."

November 20, 1929, the deputy collector of customs issued a shipwrecked seamen's certificate addressed to the master of the steamship Yukon, also owned and operated by appellant, requiring the master of the Yukon to transport the crew of the Depere to the port of Seattle, Wash., and agreeing to compensate appellant for such transportation in a certain amount. The United States deputy collector of customs at Seattle certified to the arrival of the crew of the Depere via the Yukon on November 22, 1929.

Appellant then applied to the Comptroller General of the United States for the compensation stipulated in the shipwrecked seamen's certificate. This claim was rejected on the ground that: "The duty of relieving and transporting the crew of shipwrecked vessels is primarily that of the owner or operator and where this duty has been undertaken the appropriation for the 'Relief and Protection of American Seamen' is not available to reimburse the owner or operator for the expense incurred in performing such duty."

This action was then brought to recover said sum, and it was alleged: "That the afore-

said action of the Comptroller General of the United States in refusing to pay the claim of the plaintiff as set forth herein constitutes an arbitrary and wrongful act; that the aforesaid ruling of the Comptroller General represented by the above-quoted letter is an arbitrary and unlawful construction and interpretation of the above-cited statutes [46 USCA §§ 678, 679] and that such construction and interpretation placed upon the said statutes by the Comptroller. General is arbitrary and illegal in the following respects, to wit: It violates and contravenes the statutes of the United States expressly allowing compensation to ship-owners transporting shipwrecked seamen to the United States, and making it the duty of the consular officers and commercial agents of the United States, and not of the owners of the shipwrecked vessel, to provide subsistence and transportation for the shipwrecked crew to some port in the United States; it renders said statutes unconstitutional and in violation of the Fifth Amendment of the Constitution of the United States, in that it results in a taking of property without just compensation or due process of law."

The record shows that it has been the practice and custom of the United States since the beginning of the present century to transport from Alaskan ports seamen shipwrecked in Alaskan waters to the port of Seattle, Wash., at the expense of the United States, whenever such transportation was authorized by a shipwrecked seamen's certificate issued by a collector of customs or a deputy collector of customs in Alaskan ports; that on many occasions during this period appellant has transported on one or another of its vessels plying between Seattle and Alaskan ports seamen of various vessels wrecked in Alaskan waters, upon the demand of the customs officers, and upon the issuance of shipwrecked seamen's certificates; that in each of such instances the United States, acting through the Comptroller General of the Treasury, has paid the amount of compensation agreed upon in said certificate upon demand of appellant; that at no time prior to this instance has payment of such compensation to appellant been refused; that on not less than three occasions appellant has transported from an Alaskan port to Seattle, upon the demand of a customs official and upon issuance of a shipwrecked seamen's certificate, as in this case, shipwrecked seamen who had served upon a vessel owned by appellant which had been wrecked in Alaskan waters, and in each instance compensation was paid by the United

States as specified in the certificate, upon demand by appellant; that it has been the practice of the Department of Commerce of the United States to regard seamen of American vessels shipwrecked in Alaskan waters as destitute seamen within the meaning of sections 593, 678, 679 and 680 of title 46, USCA; and that the Department of Commerce has supplied the customs officials in Alaska with printed forms entitled "Certificate given by Customs Officers to Masters of Vessels Transporting Shipwrecked American Seamen to the United States from Alaska—Department of Commerce and Labor, Bureau of Navigation," and has instructed such officers to arrange for the transportation to the United States of shipwrecked seamen by issuing said certificates to the masters of vessels bound for the United States, requiring them to transport said seamen to the United States for a compensation agreed upon in said certificates; and that it likewise has been the practice of the Comptroller General of the United States to pay out and disburse from the "Appropriation for the Relief and Protection of American Seamen," upon presentation of a shipwrecked seamen's certificate to the Treasury Department of the United States, the sum agreed to be paid in such certificate.

The trial court rendered a memorandum opinion, as its findings of fact and conclusions of law, ordering a judgment of dismissal. (D. C.) 60 F.(2d) 135.

The shipping articles contain the following provision: "It is agreed between the Master and seamen, or mariners, of the S. S. Depere, of New York, N. Y., of which J. Newland is at present Master, or whoever shall go for Master, now bound from the port of Seattle, Wash., to Ketchikan, Alaska, and such other ports and places in any part of Alaska and B. C., as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding two calendar months."

■ The learned trial court held that these articles imposed an obligation on the owner of the vessel to return the seamen to the port of shipment after the wreck of the vessel. While we are affirming the judgment on another ground, we do not wish to be understood as approving that construction of the articles. As we construe them, they merely describe the voyage, the general nature and probable length thereof, and the port at which the voyage was to terminate. In the event of the wreck of a vessel, the statute

itself fixes the status of the destitute seamen. Section 593 of title 46, USCA, reads as follows: "§ 593. *Termination of Wages by Loss of Vessel; Transportation to Place of Shipment.* In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period. Such seaman shall be considered as a destitute seaman and shall be treated and transported to port of shipment as provided in sections 678, 679, and 681."

And this section, when construed in connection with the above-quoted sections, provides for the return transportation of the seamen to the port of shipment at the expense of the government, provided, of course, such transportation is from a foreign port, and that suitable arrangements for such transportation are made as required by said statutes. In the absence of a provision in the shipping articles obligating the owner of the vessel to return the seamen to the port of shipment, the contract was terminated by shipwreck; otherwise the law would not have placed the burden of returning such seamen upon the government.

█ Appellant lays great stress upon the Act of January 3, 1923 (42 Stat. 1072 [see 46 USCA § 680]), which reads as follows: "Relief and protection of American seamen in foreign countries, and in the Panama Canal Zone, and shipwrecked American seamen in the Territory of Alaska, in the Hawaiian Islands, Porto Rico, the Philippine Islands, and the Virgin Islands, $200,000: Provided, That hereafter the amount agreed upon between the consular officer and the master of the vessel in each individual case not in excess of * * * 2 cents per mile, together with such additional compensation for transporting sick or disabled seamen as

is now provided by law, shall in each case constitute the lawful rate for transportation on steam vessels."

Undoubtedly it was the intention of Congress, as manifested by this act, to extend the appropriation for that year to the transportation of shipwrecked seamen from Alaskan ports to the United States, but the terms of the act would seem to indicate that this purpose has failed of accomplishment, there being, of course, no American consular officer in Alaska. This proviso as to transportation was not carried into subsequent appropriation acts for the relief and protection of shipwrecked American seamen in the territory of Alaska. The general legislation upon the subject of such transfer made no specific reference to the territory of Alaska, nor to any other specific territory, but simply authorized payment for such transportation solely upon the certificate of an American consular officer. The question is whether or not the certificate of the deputy collector of customs at Ketchikan satisfies the above-quoted statute (sections 678, 679, title 46, USCA). We are of opinion that it does not, and that there is no authority for entering a judgment against the United States based upon such a certificate, or upon a certificate of any agent or officer of the government other than the one specially authorized by statute. It follows, therefore, that the government is not estopped from insisting upon the invalidity of the certificate or agreement in question. The fact that the seamen were delivered to the master of the steamship Yukon, owned by appellant, and by appellant transported to the port of shipment on that vessel, would not bar a recovery by appellant, if otherwise entitled thereto. 3 Decisions of Comptroller General 936.

The judgment of the District Court is affirmed, without prejudice to the right of appellant to apply to Congress for such relief as the facts of the case may warrant.