## AMERICAN SCANTIC LINE, Inc., v. UNITED STATES.

District Court, S. D. New York.
July 28, 1933.

J. Warren Brock and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Edward W. Wells, U. S. Atty., both of Philadelphia, Pa., for defendant.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for petitioner.

George E. Medalie, U. S. Atty., of New York City (William E. Collins, Sp. Asst. to U. S. Atty., of New York City, of counsel), for the United States.

KNOX, District Judge.

On November 21, 1928, the steamship Casper, owned by American Scantic Line, Inc., left New York upon a voyage to Copenhagen and Helsingfors and return to a port of the United States. The vessel stranded off the Finnish Coast on December 14, 1928. Nine days later, and while still aground, the vessel took fire and burned to the water's edge. She was totally destroyed, and all of the belongings of her crew were lost.

The day following the necessary abandonment of the vessel, the American consul at Helsingfors, Mr. Wilkinson, was telegraphically informed of what had happened. He at once proceeded to Abo, where the crew had assembled. He found that the vessel's agent was caring for the men, furnishing them with food, clothing, shelter, and necessary medical attention. Notwithstanding this succor, one of the seamen died at Abo and later another at Helsingfors, to which city the men, in order to be within reach of proper care, were taken on Christmas Day.

The record shows that, upon Mr. Wilkinson's arrival at Abo, he was without government funds with which to defray the cost of relief to the crew. Neither did he have the wherewithal to cover the expenses of travel of the men to Helsingfors. The burden of bearing these charges was assumed, temporarily at least, by the agents of the wrecked ship. At Helsingfors, the consul advanced the sum of $297.67 from his personal money in giving necessary aid and comfort to the stranded mariners. Revealing this fact to representatives of petitioner, he told them that, if they would reimburse him for the outlay, he would place the question of liability of this government in the premises before the State Department at Washington. The consul thereupon received the amount which he had personally expended upon behalf of the crew.

Thereafter the consul, as provided by law, and for the purpose of repatriating the crew of the Casper, issued certificates to the masters of vessels, owned and operated by petitioner, for the transportation of members of the crew to the United States, agreeing that, upon presentation of the certificate, properly indorsed, to the Department of State, the masters would be entitled to receive the statutory rate of 2 cents per mile for the transportation of each of the men. These certificates, however, contained a notation to the effect that the consul's agreement was subject to any decision to the contrary by the Comptroller of the United States, citing Comptroller General's Decisions, 252 and 632.

In January, 1929, petitioner submitted vouchers showing the payments which it had made for relief of the crew to the consul. These expenditures appear to have been altogether reasonable, and to have been necessary in furnishing proper care to the men. The consul then took up the question of the right of petitioner to receive reimbursement of its expenses from the government. In reply to his inquiry, the consul was informed that the Comptroller General had previously ruled (3 Comptroller General, 148) that, "As soon as the owners of a wrecked vessel take up the burden of subsisting and transporting members of the crew they cease to be destitute seamen on the hands of the Consul and claimant may not be reimbursed from public funds for any part of the cost to it of the transportation and subsistence expenses of the crew of the steamship to a port in the United States."

The State Department accepted this ruling as being immediately determinative of the consul's query, but added that "In event Messrs. Moore and McCormack are of the opinion that they should, nevertheless, be reimbursed by the Government for any part of their expenditures in this case, it is assumed that a formal claim will be presented to the Department for administrative action and transmission to the Comptroller General of the United States, for determination as to its merits."

Claims for all of petitioner's expenditures, together with transportation charges, were subsequently presented to the Comptroller General for payment, but were disallowed. This suit, founded on the Tucker Act, brings the matters to this court for decision.

Section 593 of title 46 USCA is in these words: "*Termination of wages by loss of vessel; transportation to place of shipment.* In cases where the service of any seaman terminates before the period contemplated in the agreement, by reason of the loss or wreck of the vessel, such seaman shall be entitled to wages for the time of service prior to such termination, but not for any further period. Such seaman shall be considered as a destitute seaman and shall be treated and transported to port of shipment as provided

in sections 678, 679, and 681. (R. S. § 4526; Dec. 21, 1898, c. 28, § 3, 30 Stat. 755.)"

This statute recently engaged the attention of the Court of Appeals for the Ninth Circuit, in the case of The Yukon, Alaska S. S. Company v. United States, 63 F.(2d) 398, 401, 1933 A. M. C. 541. Speaking of the section, the court said that, when construed in connection with sections 678, 679 and 681, 46 USCA, it "provides for the return transportation of the seamen to the port of shipment at the expense of the government, provided, of course, such transportation is from a foreign port, and that suitable arrangements for such transportation are made as required by said statutes. In the absence of a provision in the shipping articles obligating the owner of the vessel to return the seamen to the port of shipment, the contract was terminated by shipwreck; otherwise the law would not have placed the burden of returning such seamen upon the government."

■ This pronouncement, it seems to me, must be sound. It is based upon a statutory enactment which gives a definite status to the shipwrecked marine of an American vessel who finds himself in a foreign land. The language of the statute is so plain that I do not see the justification of an administrative construction which can operate to a contrary effect. The purpose behind the statute, I infer, was that an American seaman cast ashore in a foreign land should not be required to rely upon his own resources, or upon the charity of those among whom he might come, to take him to the country on which his ill-fated voyage began. Congress also conceived, I assume, that shipwreck might come to a vessel at a place where no representative of the owner, capable of furnishing relief to the seaman, was to be found. Hence, care of the seaman, as well as the duty of sending him back to America, was committed to American consuls who may be found in most parts of the world, and it was intended that the government, if the expenditures and charges were made or incurred by a consul, should bear the cost. The legislative branch of the government might well have placed an obligation upon the owners of the wrecked vessel to repay the government for such outlay as it might make, but apparently this has not been done. Hence the chance circumstance that destitute seamen, upon proper consular certificates, are carried from a foreign land to the United States upon vessels belonging to the owner of the lost or stranded craft, should not deprive the carrier of statutory compensation

for the service. In saying this, it must be remembered that this is not a case in which the destitution of the seamen is attributable to the fault or misconduct of the vessel's owner. See 26 Op. Attys. Gen. 631. While the government here says that petitioner has neither alleged nor proved that the wreck of the Casper was without fault of the shipowner, and this is true, the burden of showing such fault, I think, rests upon the government. In other words, a defense of this nature is of an affirmative character. As the Attorney General said in the opinion just cited, "the guilt of a vessel owner or responsibility for violation of the law, as charged here, is not, of course, to be assumed."

■ I shall rule, therefore, that petitioner is entitled to recover for the transportation charges which constitute the second, third, and fourth causes of action in the complaint. The recovery sought by the fifth cause of action has all but been abandoned by petitioner. It possesses no merit, and contentions with respect thereto are resolved in favor of defendant.

■ The first cause of action remains. It relates to moneys expended by petitioner for subsistence and necessaries for the crew of the Casper. Unfortunate as it may be from humane considerations, these expenditures do not carry the consular validation which characterizes the repatriation charges. The expenditures of petitioner for subsistence of the crew must be regarded as those of a volunteer, and they may not here be recovered from the United States. True enough, the consul was without funds to comply with the duties which the law laid upon him. It is also the fact that, had it not been for the generosity of petitioner, the suffering and distress of the crew might well have been of a much more serious character, but these considerations cannot avail petitioner. As was said in Gibbons v. United States, 8 Wall. 269, 274, 19 L. Ed. 453: "No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents"— nor, I might add, for their neglect to provide for the proper performance of their duties. In saying this, there is no intention to reflect in any way upon Mr. Wilkinson. He did all that he reasonably could, but he had no funds with which to act. Therefore the government's obligations had to be discharged through the charity of petitioner. Under the law, as I see it, the dispenser of the charity must find reward in the virtue that was displayed.