ALASKA STEAMSHIP CO. v. UNITED STATES.

No. 56.  Argued November 15, 1933.—Decided December 4, 1933.

*Mr. Norman M. Littell,* with whom *Mr. Cassius E. Gates* was on the brief, for petitioner.

*Assistant Solicitor General MacLean,* with whom *Solicitor General Biggs* and *Mr. J. Frank Staley* were on the brief, for the United States.

Mr. Justice Stone delivered the opinion of the Court.

In this suit, brought under the Tucker Act, 24 Stat. 505, in the District Court for Western Washington, petitioner sought compensation at an agreed rate for the transportation of certain destitute seamen from Ketchikan, Alaska, to Seattle, under the provisions of § 4578 R.S., as amended, 46 U.S.C. § 679. That section imposes on masters of United States vessels homeward bound the duty, upon request of consular officers, to receive and carry destitute seamen to the port of destination at such compensation not exceeding a specified amount as may be agreed upon by the master with a consular officer, and authorizes the consular officer to issue certificates for such transportation, "which shall be assignable for collection." By § 4526 R.S., 17 Stat. 269, as amended December 21, 1898, 30 Stat. 755, 46 U.S.C., § 593, seamen, whose term of service is terminated by loss or wreck of their vessel, are "destitute seamen," and are required to be transported as provided in § 4578.

The demand in the present case was for compensation for the transportation of the crew of the S.S. Depere,

owned by petitioner, which had been wrecked on the Alaska coast and for that reason had been unable to complete her voyage. The crew was received and carried to Seattle on petitioner's S.S. Yukon, on certificate of the deputy customs collector of Alaska that he had agreed with the master for their transportation at a specified rate. The Comptroller General refused payment upon the certificate on the sole ground that it was the duty of petitioner to transport to the United States the crew of its own wrecked vessel, and that the Congressional appropriation for the relief of American seamen was not available to compensate the owner for performing that duty. Judgment of the district court dismissing the complaint, 60 F. (2d) 135, was affirmed by the Court of Appeals for the Ninth Circuit, on the ground that the certificate of the deputy collector authorizing the transportation did not satisfy the requirement of the statute that the certificate should be that of a consular officer. 63 F. (2d) 398. This court granted certiorari.

The government, conceding that the statute by long administrative practice has been construed as authorizing payment for transportation of seamen from Alaska on the certificate of deputy customs collectors, insists that it does not authorize payment to the owner for the transportation of the crew of his own wrecked vessel and that such has been its administrative construction.

1. If the statutory language is to be taken literally, the certificate, which by R.S. § 4578 is authority for the transportation and evidence of the right of the vessel to compensation, must be that of a consular officer. Deputy collectors of customs are not consular officers and there are no consular officers in Alaska. If the right to compensation is dependent upon certification by a consular officer the statutes providing for transportation of destitute seamen can be given no effect in Alaska. But the meaning of this provision must be ascertained by reading

it with related statutes and in the light of a long and consistent administrative practice.

Since 1792 the statutes of the United States have made provision for the return of destitute seamen to this country upon suitable action taken by consular officers of the United States.[1] And since 1803 the government has undertaken to compensate for their transportation.[2] Beginning in 1896, Congress has made provision for the relief of American seamen shipwrecked in Alaska in annual appropriation bills for the maintenance of the diplomatic and consular service. The appropriation bill for that year, 29 Stat. 186, and every later one has extended the benefits of the appropriation for the relief of American seamen in foreign countries to "American seamen shipwrecked in Alaska." [3] The appropriation for 1922 and 1923, c. 204, 42 Stat. 599, 603; c. 21, 42 Stat. 1068, 1072, contained the proviso, not appearing in previous acts, that no part of the appropriation should be available for payment for transportation in excess of a specified rate agreed upon by a consular officer and the master of the vessel. The proviso did not appear in subsequent appropriation acts, but by Act of January 3, 1923, 43 Stat. 1072, it was transferred to its proper place in the shipping laws, where it now appears in § 680 of Title 46 of the United States Code. The Act of 1929, 45 Stat. 1098, applicable when the seamen in the present case were transported, appropriated $70,000 " for relief,

---

[1] Act of April 14, 1792, c. 24, 1 Stat. 254, 256.

[2] Act of February 28, 1803, U.S. Statutes at Large, Vol. 2, 204. The substance of these statutes was carried forward as R.S. §§ 4577, 4578, 4579. These sections were amended by § 9 of the Act of June 26, 1884, c. 121, 23 Stat. 53, 55; as amended, they became §§ 679, 680 and 681 of Title 46, U.S.C

[3] Before 1896 the provision in the appropriation bill was stated to be for the relief and protection of American seamen in foreign countries, Acts of 1892 and 1893, 27 Stat. 233, 506; Acts of 1894 and 1895, 28 Stat. 150, 824.

protection and burial of American seamen in foreign countries, in the Panama Canal Zone, and in the Philippine Islands, and shipwrecked American seamen in the Territory of Alaska, in the Hawaiian Islands, in Porto Rico and in the Virgin Islands." By the amendment of R.S. § 5226 of December 21, 1898, 30 Stat. 755, 46 U.S.C., § 593, it was provided that where the service of a seaman terminates by reason of the loss or wreck of the vessel, " he shall not be entitled to wages for any period beyond such termination of the service and shall be considered as a destitute seaman, and shall be treated and transported to port of shipment," as provided in R.S. § 4578. No exception is made in the case of transportation of seamen from Alaska or other dependencies of the United States.

Thus, from 1896 to the present time, there has been a definite obligation on the part of the government to provide transportation for shipwrecked seamen without reference to the place where shipwrecked, and funds have been annually appropriated for the purpose of carrying out that obligation in the case of seamen shipwrecked in Alaska. As appears from the findings of the trial court, not challenged here, the appropriations have been expended for the transportation of shipwrecked seamen from Alaska, in conformity to a practice established and consistently followed at least since 1900. Certificates for the transportation of shipwrecked seamen have been regularly signed and issued by the collector of customs or the deputy collector in Alaska upon forms provided by the Bureau of Navigation of the Department of Commerce. That Bureau, which has a general superintendence over merchant seamen of the United States, 46 U.S.C., §§ 1 and 2, has regularly supplied its customs officials and its agents in Alaska with these forms, with instructions that they were to be used in arranging transportation of shipwrecked seamen to the United States, as provided by the sections of the statute to which reference has been made. The stipu-

lated amounts due for the transportation, as certified, have been regularly paid without objection upon presentation of the certificate to the disbursing officer of the United States.

Courts are slow to disturb the settled administrative construction of a statute long and consistently adhered to, *Brown* v. *United States,* 113 U.S. 568, 571; *United States* v. *Philbrick,* 120 U.S. 52, 59; *United States* v. *G. Falk & Bro.,* 204 U.S. 143, 151. This is especially the case where, as here, the declared will of the legislative body could not be carried out without the construction adopted. That construction must be accepted and applied by the courts when, as in the present case, it has received Congressional approval, implicit in the annual appropriations over a period of thirty-five years, the expenditure of which was effected by resort to the administrative practice, and in amendments by Congress to the statutes relating to transportation of destitute seamen without modification of that practice. *United States* v. *G    lk & Bro., supra;* compare *United States* v. *Missouri Pacific R. Co.,* 278 U.S. 269.

2. The rejection of petitioner's claim by the Comptroller General rests upon the supposed duty of the owner to transport to the home port the seamen of its own wrecked vessel.[4] Diligent search by counsel of the ancient learning of the admiralty has failed to disclose the existence of any such duty. At most, in the absence of statutory command or of stipulations in the shipping articles providing otherwise, the rights of the seamen after shipwreck, preventing the completion of the voyage, appear to have been limited to wages payable from freight earned on the voyage or to

---

[4] Similar rulings appear to have been made in the following cases: 3 Comptroller General (1924) 575; 4 *id.* (1924) 118, 252, 483, 542; *id.* (1925) 632; 5 *id.* (1926) 623; 6 *id.* (1927) 723; 8 *id.* (1928) 211.

wages or salvage from the vessel they have helped to save.[5] It is unnecessary for us to consider to what extent these rights have survived the statutes regulating the duties of the owner toward the seamen or what bearing they may have on the duty of the owner to transport the seamen. For there is no finding and no evidence in the present case that the wrecked vessel had earned freight on her voyage or had been salvaged either with or without the aid of her seamen. Under those statutes we think it plain that no duty is imposed on the owner to provide transportation for seamen of his own wrecked vessel and that the statutory undertaking of the government is not upon condition that destitute seamen shall be transported upon vessels other than those of the owner of the wrecked vessel.

There are numerous instances in which the statutes of the United States specifically impose on the master the duty to provide seamen with transportation if he does not secure employment for them on another vessel.[6] But there is no statute imposing any duty on the vessel or owner to provide transportation for seamen who may be shipwrecked or who are discharged because incapacitated for further service. See R.S. § 4581, 46 U.S.C., § 683.

[5] See *The Dawn*, 7 Fed. Cas., No. 3666; *The Massasoit*, 16 Fed. Cas., No. 9260; *Brown* v. *Chandler*, 4 Fed. Cas., No. 1998; *The Lady Durham*, 3 Hag. Adm. 196; Molloy, De Jure Maritimo et Navali, 1744, 249; Abbott, Laws of Shipping, Am. Ed. by Justice Story, 1854, 780. But see *The Elizabeth*, 2 Dods. 403, 412.

[6] The following instances may be noted: Where a seaman leaves a vessel because she was previously sent to sea in an unseaworthy state by neglect or design of the owner, R.S. § 4561, 18 U.S.C. § 658; where a seaman is discharged because his vessel is sold abroad, R.S. § 4582, 46 U.S.C. § 684; where a seaman leaves the vessel because the voyage is continued contrary to agreement, or because the vessel is badly provisioned or unseaworthy, or because he had been subjected to cruel treatment, R.S. § 4583, 46 U.S.C. § 685; see also R.S. § 4522, 46 U.S.C. § 703.

The statutes terminate seamen's right to wages with the termination of their service by the shipwreck, and without qualification impose on the government the obligation to transport them. It cannot be supposed that the performance of this obligation, which since the early days of the government has been treated by Congress as a public duty, was intended to be conditional upon the ability of seamen, left destitute in a distant land, to induce the shipowner to transport them in performance of a supposed duty which the statute neither imposes nor mentions.

The Department of Commerce, not the Comptroller General, is charged with the administration of the statute, 4 Comptroller General Rep., 252, 253, and its administrative practice should be followed if thought to be controlling. But in any case, there is no ambiguity or uncertainty in the statute with respect to the point urged by the government, and, in carrying it out as written, there is no administrative difficulty which would call for construction. The rulings of the Comptroller General rest upon a proposition so plainly contrary to law and so plainly in conflict with the statute as to leave them without weight as administrative constructions of it. *United States* v. *Missouri Pacific R. Co., supra.*

*Reversed.*