**FEDERAL TRADE COMMISSION**
v.
**Fred J. BOWMAN, President, Wilson Athletic Goods Manufacturing Company.**
**No. 56 C 1372.**

United States District Court
N. D. Illinois.
Feb. 15, 1957.

William A. Somers, Chicago, Ill., Dwight L. Carhart, Andrew C. Goodhope, Washington, D. C., for petitioner.

Thomas Freeman, Louis R. Simpson, Howard C. Parson, Chicago, Ill. for defendant.

HOFFMAN, District Judge.

The Federal Trade Commission has filed in this court a petition for enforcement of its subpoena duces tecum directed against the defendant, Fred J. Bowman, President of the Wilson Athletic Goods Manufacturing Company, under Section 9 of the Federal Trade Commission Act, 38 Stat. 722, 15 U.S. C.A. § 49. The defendant has resisted enforcement upon the grounds that the subpoena is beyond the power of the Commission to issue and that it is unreasonable and oppressive.

The dispute arises in the course of a proceeding commenced by the Commission against A. G. Spalding & Bros., charging Spalding with a violation of Section 7 of the Clayton Act, 15 U.S. C.A. § 18, resulting from its purchase of a competitor, Rawlings Manufacturing Company. The issues as framed in that proceeding center around the question whether the effect of this purchase may be "substantially to lessen competition, or to tend to create a monopoly" within the meaning of the

Clayton Act and the allegations of the complaint.

Seeking evidence concerning the effect of the purchase, the Commission issued its subpoena against the defendant, as President of the Wilson Athletic Goods Manufacturing Company, a competitor in the field. As summarized in the Commission's memorandum filed in support of this petition, the subpoena required the defendant to appear to testify and to produce documents showing:

1. Defendant's production for the past four years as shown by compilations in defendant's possession and any related documents;

2. Athletic goods manufactured by the Wilson company by units for the years 1952 through 1955;

3. Sales by the Wilson company of athletic goods by units, dollars, and price class of products during the years 1952 through 1955;

4. Purchases by the Wilson company of athletic goods for resale by units, dollars, and price class for the past four years;

5. All patents on athletic goods or production thereof which the Wilson company owns, the licensees under the patents, and the royalties paid to the Wilson company since January 1, 1952;

6. All patents on athletic goods or production thereof owned by others of which the Wilson company is the licensee, the license agreement, and the royalties paid by the Wilson company since January 1, 1952;

7. All agreements between the Wilson company or any subsidiary with any athlete or athletic organization for the use, gift, sale, or endorsement of any of the Wilson company's athletic goods during the last four years;

8. Catalogs and price lists of the Wilson company for the last four years; and

9. Names and addresses of suppliers of the Wilson company who supplied more than 5% of the Wilson company's total purchases of raw material used in the production of athletic goods, including the units and the dollar value thereof.

The defendant Bowman personally appeared in response to the subpoena, but refused to supply the requested documents, claiming that the Commission lacked power to compel their production; that production would impose an unreasonable burden upon the Wilson company by requiring it to transport voluminous records from some thirty-two establishments in twenty-nine cities to the place of hearing, with consequent disruption of its business; and that compliance with the subpoena would involve disclosure of confidential business information and trade secrets. Upon the defendant's refusal to comply, the Commission filed this application for the aid of the court in compelling production of the requested documents.

The first point of argument raises the question whether the Federal Trade Commission, or this court in its support, is empowered to order the defendant to produce any documents at all. The defendant urges that the only charge of any violation of law is directed against A. G. Spalding & Bros., and that the Wilson company is not being proceeded against. It follows, according to the argument, that the Wilson company, being neither a party nor a prospective party to any proceeding but only a potential witness, is not subject to a subpoena duces tecum. The argument rests upon the interpretation of Section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, which provides in part:

"For the purposes of sections 41–46 and 47–58 of this title the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating

to any matter under investigation.
\* \* \* "

The word "such", in the defendant's reading of this section, incorporates all the limiting description of documentary evidence as used in the preceding clause. So construed, the act would authorize the Commission only "to require by subpoena \* \* \* the production of all [such] documentary evidence *of any corporation being investigated or proceeded against* relating to any matter under investigation." In this view, if the Wilson company is not charged with the violation of any law administered by the Commission, then the company is not "being investigated or proceeded against" within the meaning of the authorization, and no power is vested in the Commission to issue a subpoena duces tecum.

It is unnecessary to decide whether the defendant's interpretation attaches more significance to the word "such" than it can reasonably be made to bear. The argument fails upon another ground. Conceding that the Wilson company is not being "proceeded against" within the meaning of the quoted portion of Section 9, the question remains whether the company is "being investigated" as that term is used in the Act. Section 6 of the Federal Trade Commission Act, 38 Stat. 721, 15 U.S.C.A. § 46, provides in part:

"The commission shall also have power—

"(a) To gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers subject to the Act to regulate commerce, and its relation to other corporations and to individuals, associations, and partnerships."

Certainly the power to investigate so conferred is broad and sweeping. There is nothing to suggest that only corporations suspected of a violation of law are subject to the power. Nor is there any reason to import such a limitation. Assuming for purpose of argument the soundness of the defendant's contention that the production of documentary evidence can be required only of corporations being investigated or proceeded against, to limit the meaning of investigation to cases of suspected violation would mean that the Commission would be powerless to perform many of the duties which Congress enjoined upon it. Where necessary evidence was in the hands of a competitor of a corporation charged with a violation, the Commission would be able to discharge its responsibility for protecting the public interest only if the victimized competitor chose to cooperate by supplying the evidence. The Commission would be limited in effect to proceeding upon the complaint of the injured party, despite the availability of private civil remedies for the protection of such parties. Effective enforcement in the public interest would be foreclosed.

Moreover, as the defendant would have me read these sections, the Commission would have unlimited power to call witnesses who are not suspected of violation and to examine them orally, but would be bound by the witness' recollection and statements; production of the books and records which constitute the best evidence of the facts could not be compelled.

This suggested interpretation would not only severely hamper the Federal Trade Commission. It would also prejudice the corporation being proceeded against in the establishment of its defense. For if the Commission were unable to compel the production of documents from non-parties in support of its charges, it would equally be powerless to lend its authority to the party charged, where the crucial evidence of innocence lay in the records of another corporation.

This court has previously held that the subpoena power conferred upon the Commission is available to it in the discharge of its duties under the Clayton Act. Federal Trade Commission v. Reed Candy Co., N.D.Ill. No. 56 C 483,

decided June 12, 1956. The same conclusion was reached in Federal Trade Commission v. Menzies, D.C.D.Md., 145 F.Supp. 164, decided August 30, 1956. In a proceeding under the anti-merger provisions of the Clayton Act, the share of the market affected by the merger and the effect on competitors engaged in the same line of commerce are crucial inquiries. The proceeding would be crippled if neither the Commission nor the party charged could produce by compulsory process the essential industry data.

A related question was before the Court of Appeals for this Circuit in Bowles v. Shawano Nat. Bank, 7 Cir., 1945, 151 F.2d 749. There the Administrator of the Office of Price Administration sought judicial enforcement of a subpoena to compel a bank to produce account records of four of its depositors who were connected with a company suspected of violating the act. The bank contended that "The Administrator can not secure a court order directing subpoena against persons who were not parties to the instant (or any other) action." 151 F. 2d at page 750. The contention was rejected by the Court.

"The Administrator, ex necessitate, needs investigatory powers both to promulgate rational orders and regulations, and to apprehend violations thereof. He can not intelligently make charges without knowing facts to substantiate them. The accused would vigorously and justly protest against unfounded charges. How is the Administrator to unearth such violations or to confirm information given him by aggrieved persons or alert loyal citizens? By investigation and checking, of course.

"The statute granting him powers is inclusive and all embracive when it comes to investigation." 151 F.2d at page 751.

In interpreting Section 9 of the Federal Trade Commission Act as it is incorporated in the investigatory legislation for other administrative agencies, other courts have held that a subpoena duces tecum may issue against corporations not parties to any proceeding nor suspected of any violation. United States v. C. & V. Poultry, Inc., D.C.S.D.N.Y.1955, 132 F.Supp. 945; United States v. Woerth, D.C.N.D. Iowa 1955, 130 F.Supp. 930.

In a number of other cases, courts have reached decisions upon the basis of an assumed power to compel nonparties to produce documents, although without directly holding that the power exists. Thus in Automatic Canteen Co. of America v. Federal Trade Commission, 1953, 346 U.S. 61, 73 S.Ct. 1017, 97 L.Ed. 1454, Mr. Justice Frankfurter considered the power of the Commission to issue subpoenas duces tecum against corporations not parties to the proceeding as a factor justifying imposing the burden of proof on the question of cost justification upon the Commission rather than upon the corporation being proceeded against. He observed, "Certainly the Commission with its broad power of investigation and subpoena, prior to the filing of a complaint, is on a better footing to obtain this information than the buyer." 346 U.S. at page 79, 73 S.Ct. at page 1027. Similarly, in E. B. Muller & Co. v. Federal Trade Commission, 6 Cir., 1944, 142 F.2d 511, the Commission had issued a subpoena duces tecum at the request of the corporation being proceeded against, compelling a competitor to disclose certain information. The defendant complained that more information should have been disclosed. The Court held the Commission had acted within its discretion in not compelling the non-party to disclose all that the defendant demanded, but it assumed that the Commission had power to grant what the defendant sought and received in part. To the same effect is Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F.2d 384, a proceeding under the provision of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. incorporating the section here in issue. The respondent objected to supplying its records, claiming that

the information should be obtained from other persons not parties to the proceeding. While apparently recognizing the availability of that source, the Court overruled the objection.

■ The decisions of the courts are not the only relevant authority upon a question of the interpretation of an act of Congress conferring powers upon an administrative agency. Interpretation by the agency itself is entitled to great weight. In Alaska Steamship Co. v. United States, 1953, 290 U.S. 256, 54 S.Ct. 159, 78 L.Ed. 302, the Court declared:

"Courts are slow to disturb the settled administrative construction of a statute long and consistently adhered to. [Citations omitted.] This is especially the case where, as here, the declared will of the legislative body could not be carried out without the construction adopted." 290 U.S. at page 262, 54 S.Ct. at page 161.

See also Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, at page 315, 53 S.Ct. 350, at page 358, 77 L.Ed. 796; United States v. American Trucking Associations, Inc., 1940, 310 U.S. 534, at page 543, 60 S.Ct. 1059, at page 1063, 84 L.Ed. 1345. For forty-two years the Federal Trade Commission has issued subpoenas duces tecum against corporations not parties to a pending proceeding. To upset this established interpretation would disrupt not only the operations of this Commission but of many other agencies operating under statutes which have incorporated this section of the Federal Trade Commission Act.

The defendant relies primarily upon two decisions as supporting his position: Federal Trade Commission v. Baltimore Grain Co., D.C.D.Md.1922, 284 F. 886, 888, and Federal Trade Commission v. W. W. Tuttle, D.C.S.D. N.Y., Civil No. M–18–304, decided June 26, 1956. Neither case controls the question here presented. In the Baltimore Grain case, a general mandamus

was sought to compel the respondent to open all its records to the Commission for purposes of compiling information and reporting to Congress as required by a Joint Resolution. As the court observed, there was "no reason to believe that any violation of law has been committed" by any person or corporation. The Joint Resolution did not expand the investigatory power, it was held, and the mandamus was denied. The holding falls far short of establishing that the subpoena power may not be used against non-parties as an incident to a pending proceeding charging a specific violation of law. The Tuttle case is also distinguishable. There, in aid of this same proceeding against A. G. Spalding & Bros., the Commission sought to obtain documents from the accountants who serve this defendant and other companies engaged in the athletic goods business. In denying the subpoena the court relied primarily upon the accountant's claim that its business would be destroyed if it were obliged to disclose this information obtained in confidence. The court also noted, however, that the Commission conceded that the accounting firm was not being "investigated" within the meaning of Section 6 of the Act, and that the Commission had conceded that the information could be obtained from the companies, like the Wilson company, that were engaged in the business. The two questions thus left open and undecided in the Tuttle case are here ripe for decision.

■ Concluding as I do that a subpoena duces tecum to this defendant is within the power of the Commission, I next turn to the defendant's argument that the subpoena is unreasonable and oppressive. It appears that compliance with the subpoena as drawn would require the production of a vast number of documents from scattered points throughout the United States. While the requested information is or may be relevant to the pending proceeding against A. G. Spalding & Bros., the imposition of a heavy burden upon

a witness not a party to that proceeding should be avoided. Under the discovery provisions of the Federal Rules of Civil Procedure, the burden of collecting a large number of documents and of compiling information from them is a ground for an order limiting the duty to produce. See Kainz v. Anheuser-Busch, Inc., D.C.N.D.Ill.1954, 15 F.R.D. 242. Rule 81(a) (3) of those Rules, 28 U.S.C.A. provides:

" * * * These rules apply (1) to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute * * *."

In Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, in construing Section 9 of the Act here involved as incorporated by the Fair Labor Standards Act, the Court observed:

"The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. * * *" 327 U.S. at page 216, 66 S.Ct. at page 509.

In Walling v. American Rolbal Corporation, 2 Cir., 1943, 135 F.2d 1003, 1005, the Court remarked:

" * * * Requiring records to be produced away from the place where they are ordinarily kept may impose an unreasonable and unnecessary hardship which in itself would make the issuance of the subpoena, otherwise proper, arbitrary and capricious. The district judge suggested in his opinion 'that the investigation be carried on at the premises of the respondent and so conducted as

not to interfere unduly with the course of its business.' The order is affirmed but our mandate will * * * make the above suggestion a part of it if the District Court so decides after due consideration."

A similar limiting order was imposed in Application of Walling, D.C.N.Y. 1942, 47 F.Supp. 255. There the judge stated:

" * * * It was suggested, and with reason as I believe, that if the petitioner could acquire the desired information without the interference with the conduct of the respondent's business that would be entailed by the production of an impressive array of its records at a comparatively distant office, the ends of justice to both the petitioner and the respondent would be served. * * *" 47 F.Supp. at page 256.

The order to be entered herein will therefor provide that the defendant must produce any compilations already prepared by it reflecting the information requested, but that the Commission must bear the burden of making new compilations from the Wilson company's sales invoices, voucher files, and other records. The defendant will be required to make available the necessary records, at the places of business where they are ordinarily kept, for examination by the Commission's agents at such times and places as will not unduly interfere with the conduct of business. Copies of specific single documents, such as compilations, catalogs, contracts, agreements, patents, and price lists, shall be produced at the place of hearing.

Finally, the defendant has objected to the disclosure of confidential business information that might prove beneficial to competitors if made public. The Federal Trade Commission Act itself recognizes the force of this claim. Section 6(f), 15 U.S.C.A. § 46(f), excepts trade secrets and names of customers from the Commission's general power to make public the information

it gathers. In Federal Trade Commission v. Menzies, D.C.D.Md., 145 F.Supp. 164, 171, the court specified:

"No part of the documentary evidence should be made public and available to the competitors of the several respondent corporations unless it is necessary to do so in the proper enforcement of the law. If requested by the respondents, the Commission should follow its practice of placing the documents offered in evidence in a confidential file, in order to keep business secrets away from the sight and knowledge of the respondents' competitors so far as it is practicable to do so in the discharge of the Commission's responsibilities under the law."

A similar qualification will be included in the order of enforcement to be entered.

Counsel are directed to confer and submit an order reflecting the views herein expressed on or before March 18, 1957.