Harry CARR, Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 5818.

United States Court of Appeals
First Circuit.

Heard Jan. 2, 1962.

Decided Jan. 31, 1962.

Rehearing Denied March 21, 1962.

Edward C. Park, Boston, Mass., with whom John R. D. McClintock, Boston, Mass., was on brief, for petitioner.

Jno. W. Carter, Jr., Atty., F.T.C., Washington, D. C., with whom James McI. Henderson, Gen. Counsel, J. B. Truly, Acting Asst. Gen. Counsel, and Frederick H. Mayer and William F. Upshaw, Attys., F.T.C., Washington, D. C., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a petition to review an order of the Federal Trade Commission. Petitioner, a garnetter of wool, has been ordered to cease and desist from misbranding garnetted material with respect to the source of the constituent fibers, and from failing to affix labels disclosing the presence of certain ingredients. It is not actively disputed that petitioner labeled certain bales of garnett as containing 80 per cent camel hair and 20 per cent wool

when in fact the percentages were more nearly reversed. The Commission also found that the bales contained reprocessed wool.[1] This finding the petitioner contests. The pertinent statute is the Wool Products Labeling Act, 15 U.S.C.A. §§ 68–68j. There is a criminal penalty provision, § 68h.

Garnetting is a process whereby surplus clippings, threads and other waste materials are shredded and untwisted so that they revert to a mass comparable in appearance and substance with the original wool prior to carding. Petitioner receives the waste from the dealer and acquires no property interest therein, but merely processes it for a fee and arranges for shipment to the dealer's consignee. Before shipping he affixes labels supplied by the dealer. Petitioner has nothing to do with the source or content of the waste and makes no tests to verify the accuracy of the labels. The Commission does not dispute his contention that it would be impractical for him to do so, but suggests that he could protect himself by a guaranty from the dealer under section 9 of the act, 15 U.S.C.A. § 68g.[2]

Certain matters may be disposed of at the outset. The act, with immaterial, stated exceptions, applies to all persons manufacturing for introduction, or introducing, wool products into commerce. The only question is whether the garnett is a wool product. If it is, it is clear that petitioner both manufacturers for introduction and introduces.[3]

Secondly, we are not impressed with petitioner's contention of the insubstantiality of the evidence that his garnett contained reprocessed wool. Petitioner tried his own case. He introduced no evidence, except to make a formal statement which, unfortunately, we find far from

---

1. Reprocessed wool is wool once felted or woven, as distinguished from merely spun or knitted, but reduced to a fibrous state without having been used by the ultimate consumer. See 15 U.S.C.A. § 68(c), infra n. 5; cf. § 68(b) and § 68(d).

2. If we agreed with the Commission that petitioner produces a wool product, then we would have grave doubts about the

possibility of such protection. As it is, we do not reach the question.

3. Petitioner suggests that the dealer had already introduced the product, if it be one. However, if garnetting is manufacturing a product, by the same token this product was first introduced by petitioner, even though at the dealer's order.

clear. This perhaps illustrates the fact that a party who tries his own case is like a man cutting his own hair—in a poor position to appraise what he is doing. But we could not set aside the finding of the Commission simply by concluding, if we should, that its investigator failed to make a comprehensive examination of all available evidence, or presented only the evidence unfavorable to the petitioner. The finding must stand.

■ The act defines a wool product as "any product * * * containing wool, reprocessed wool, or reused wool." 15 U.S.C.A. § 68(e).[4] This takes care of the content, but it gives no assistance on the crucial word "product." The Commission dealt with this subject simply by pointing out that something could be an intermediate or process product although it fell short of being a final product. It quoted from Tide Water Oil Co. v. United States, 1898, 171 U.S. 210, at 216, 18 S.Ct. 837, at 839, 43 L.Ed. 139 "Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product." We do not find this particularly helpful, because it does not resolve the real question, which is when is a process sufficiently advanced to reach the dignity of a new product. In Hartranft v. Weigmann, 1887, 121 U.S. 609, at p. 615, 7 S.Ct. 1240, at 1243, 30 L.Ed. 1012, in holding that cleaning and grinding seashells, even though by machinery, did not result, for purposes of import duties, in "shells manufactured, or manufacturers of shells," the court said,

"They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character, or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that

term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton."

Correspondingly, washing and carding wool does not make a wool product. It is still, generically, wool. The Commission, however, concluded that the garnett in question "is the finished product of the manufacturing process performed by respondent and * * * [s]ince it contains wool and reprocessed wool, it is a 'wool product' within the meaning of that term."

The Commission did not amplify its reasoning. But it seems clear that it could not have found that garnett is a product simply because appellant had performed his own final step. Cleaned wool, which is not normally a wool product, would not become such because it was the only operation performed by a particular individual. If Congress wanted wool labeled, as distinguished from a wool product, it would have been easy to say so. The word "product" must refer objectively to some characteristic of the article itself, irrespective of the party or parties concerned in its manufacture.

In oral argument the Commission contended that since at least some of the ingredients were waste from what had admittedly been wool products, it followed that the garnett was a wool product. We do not follow the logic of this argument. Product comes from the Latin *pro ducere*, to lead forward. Garnett means, "To remove foreign substance from (wool or cotton) or to *reduce* (waste) to fiber, by passing through a machine provided with Garnett teeth." (Webster's New International Dictionary, Unabridged, 2d ed.; ital. suppl.). We cannot but be struck by the antithetical meanings of *producing* and *reducing* to the fiber for the purpose of starting over again. The qualities of an article, and hence whether it is a

4. "(c) The term 'wool product' means any product, or any portion of a product, which contains, purports to contain, or in any way is represented as containing wool, reprocessed wool, or reused wool."

"product," must be judged by what it is, not by what it may once have been. In Patton v. United States, 1895, 159 U.S. 500, at 508, 16 S.Ct. 89, at 92, 40 L.Ed. 233 the court said,

"We are also of opinion that the importations in question cannot be considered as manufactures of wool. Assuming that the tops, before being broken up, represented a stage in the process of converting the wool into cloth, which would entitle them to be considered as manufactures; if the tops be reconverted into wool, so that the process has to be gone through with again, the wool loses its character as a manufacture and resumes its character as wool, even though it acquires the new commercial designation of waste."

We hold that a garnett composed exclusively of ordinary wool waste, that is to say wool which has never been processed, is still wool and not a wool product. It should follow that a garnett of wool which has been processed is no more than reprocessed wool. In fact such garnett exactly meets the basic statutory definition.[5] To the extent that woven or felted wool waste entered into petitioner's operation his garnett was reprocessed wool, not a product of reprocessed wool.

Petitioner does not come under the act. Whether misdescription of the content of the garnett was an offense under some other statute has not been claimed or argued.

A decree will be entered vacating the order of the Commission.

WOODBURY, Chief Judge (dissenting).

The basic wrongdoer here was the owner of the material who was also the one who provided the false labels innocently affixed to it by Carr before he shipped it in interstate commerce at the owner's directions, that is to say, Nichols & Company, which agreed to a consent order to cease and desist. It seems to me that the order against Nichols & Company should have satisfied the Commission since it nipped the wrong at its source. I think Commission action should have expended itself against Nichols & Company, for in practical effect Carr acted innocently in its place and stead when he affixed its labels to its material. However, I cannot agree that the Commission went beyond its statutory power in issuing its order against Carr.

Garnetted wool is fibrous wool in an unspun state but it is not virgin wool. It is produced by mechanical means from wool which has once been felted or woven, to wit, "reprocessed wool" as defined in the statute. I see no escape from the conclusion that in consequence it is a wool product, i. e. something produced or made out of reprocessed wool, and therefore under the statute should have been accurately labeled for what it was by Carr who manufactured it for introduction into interstate commerce.

On Petition for Rehearing.

ALDRICH, Circuit Judge.

In its brief in support of its petition for rehearing the Commission charges that we have "[w]ith a single stroke of the pen * * * obliterated 20 years of enforcement practice by the Commission." It furnishes a pageful of citations to its own previous rulings and consent orders, and winds up reciting that administrative practice is the ultimately determining factor in statutory construction, citing Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796; Alaska S.S. Co. v. United States, 1933, 290 U.S. 256, 54 S.Ct. 159, 78 L.Ed. 302; F.T.C. v. Mandel Bros., Inc., 1959, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893. Since rehearing is a discretionary matter, let us turn the inquiry about and see what the Commission's "pen" has hitherto been doing.

---

5. "(c) The term 'reprocessed wool' means the resulting fiber [product] when wool has been woven or felted into a wool product which, without ever having been utilized in any way by the ultimate consumer, subsequently has been made into a fibrous state."

This case was argued primarily on statutory construction. In petitioner Carr's original brief, and in his reply brief, he contended at length that the Wool Products Labeling Act applies in terms only to "products" and does not apply to basic materials. His argument centered upon what, within the meaning of the act, constitutes a product. He commenced by pointing out that no one has suggested that virgin wool is a product, or, more exactly, that wool is, per se, a "product * * * containing wool. * * * *" He then argued, to our satisfaction, that a garnett of reprocessed wool is, precisely, basic reprocessed wool, and therefore is not a "product * * * containing * * * reprocessed wool." Possibly he did not make his argument in the exact form which we adopted, but clearly it was analysis of the statutory language, a procedure which the Commission now describes, seemingly opprobriously, as "semantics and hermeneutics." In reply the Commission stated in its brief that the question of whether virgin wool itself is a wool product was not an issue in the case. In oral argument, in response to a question from the court, Commission counsel went further and conceded that there was no contention that wool itself is a wool product. On this assumption, which even now the Commission does not dispute, except perhaps indirectly when it launches into the rhetorical part of its argument, we reached the corresponding conclusion that reprocessed wool was not in itself a "product * * * containing * * * reprocessed wool." We have carefully reviewed the Commission's brief. It made no mention or reference, direct or indirect, to administrative practice to rebut this "semantics," nor did it in oral argument. Neither, may we add, did the Commission's opinion.[1]

■ This is not a case of a party caught in some manner by surprise. It is not even the case of indifferent counsel not versed in every branch of the law. In general matters, even though not obliged to do so, we commonly make our own re-

search. But a court cannot be expected to rummage among administrative rulings and consent orders sua sponte when the party most directly involved and knowledgeable makes no suggestion that anything would be found there. For a governmental agency best familiar with its own practice with respect to a matter directly in issue, and now said to be of paramount importance, to make no mention of the subject until after it had lost the case on another ground, if deliberate, is a breach of duty to the court and, if inadvertent, is still inexcusable. The Commission's petition for rehearing raising this allegedly vital point contains no mention of why it was first developed at this late date, let alone any apology for so doing.

■ Secondly, the petition for rehearing calls our attention to certain legislative history which the Commission interprets as indicating error in our decision. In this instance legislative history was initially argued. It was argued, however, solely by Carr. Even in oral argument the Commission made no response on this subject, and no request to be permitted to reply in any supplementary manner. Dealing with the Commission's new contentions as to legislative history, however, we will say that they are unpersuasive. They would be pertinent only if we had held that a wool product is not a product until it is a "finished manufactured article." We disclaimed any such holding in the sense that the Commission now charges, and recognized that a product could be an intermediate or process product short of a final one.

Finally, we must comment upon two statements contained in the Commission's present brief in which it describes a garnetter as an individual qualified to "know the precise fiber content of his product," and asserts that the purpose of the Wool Products Labelling Act is to protect manufacturers of finished wool products against "unscrupulous" garnetters. In Carr's original brief he developed the point that as the supplier of

[1]. In fairness, the Commission cited one prior decision. But this was scarcely a showing of a practice; nor was it so suggested.

a single mechanical process he was in no position to know the camel hair content of the waste materials supplied to him. Neither the findings of the Commission, nor the written or oral arguments made before us hitherto, in any way disputed this contention. It may be that it is desirable that garnetters be required to assume personal responsibility for labeling, but if so it is not on the basis of the unsupported argument that the Commission now makes that ultimate manufacturers are innocent parties incapable of protecting themselves and that garnetters are villains.

If upon some subsequent occasion the Commission wishes to point out to this court, or to any other court, that our decision was made without consideration of administrative history it will be free to do so. But we do not choose to go further at this time.[2]

The petition for rehearing is denied.

WOODBURY, Chief Judge, while adhering to his views previously expressed, concurs herein.

2. We may remind the Commission that when Carr discovered he was in difficulties because he had poorly presented his case before it, and sought to reopen, the Commission denied his motion on the ground that one opportunity was enough. It might be said that what is sauce for Carr's goose is sauce for the Government's.