494 F.2d 681
 Dewey SORIANO, Appellant,
v.
UNITED STATES of America and Commandant, United States Coast
Guard, an agency of the Department of
Transportation, of the United States of
America, Appellees.
 No. 72-2324.
 United States Court of Appeals, Ninth Circuit.
 March 21, 1974.
 
 Jacob A. Mikkelborg (argued), Charles E. Watts, Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for appellant.
 Harriet Shapiro (argued), Thomas J. Press, Kathryn H. Baldwin, Dept. of Justice, Washington, D.C., Albert E. Stephan, Asst. U.S. Atty., Seattle, Wash., Robert J. Finan, Dept. of Justice, San Francisco, Cal., for appellees.
 Before ELY, CHOY and GOODWIN, Circuit Judges.
 ALFRED T. GOODWIN, Circuit Judge:
 
 
 1
 Dewey Soriano appeals from a judgment affirming a decision by the Commandant of the Coast Guard suspending Soriano's federal pilot's license for one year. We agree with Soriano's contention that the Commandant exceeded his jurisdiction, and reverse the judgment.
 
 
 2
 On September 20, 1967, Soriano was piloting a Liberian vessel when it collided with another vessel in Puget Sound. Although Soriano had a federal pilot's license, he was then serving as a pilot under the laws of the state of Washington. These laws required him to hold a federal license before he could obtain state authorization to act as a pilot in Puget Sound.[1]
 
 
 3
 The Coast Guard investigated the collision under the authority of 46 U.S.C. 239(b), charged Soriano with negligence and misconduct in connection with the collision, and conducted a hearing to determine whether his federal license should be suspended. The hearing examiner, relying upon a Coast Guard regulation, 46 C.F.R. 137.01-35(a), found that he had jurisdiction and concluded that Soriano had been negligent. He ordered Soriano's license suspended for one year, pursuant to 46 U.S.C. 239(g).[2] The Commandant and the district court affirmed the examiner's findings, both as to jurisdiction and on the merits.[3]
 
 
 4
 Soriano's principal contention here is that the Commandant lacked jurisdiction under 46 U.S.C. 239 to suspend his federal license. Section 239(b) directs the Commandant to establish rules and regulations for the investigation, inter alia, of 'all cases of acts of incompetency or misconduct committed by any licensed officer * * * while acting under the authority of his license * * *.' Pursuant to this direction, the Commandant has promulgated regulations in 46 C.F.R., Pt. 137. Section 137.01-35(a) provides that an officer is acting under the authority of his federal license in situations in which the holding of this license is 'required by law or regulation or is required in fact as a condition of employment.'
 
 
 5
 Soriano argues that this regulation is an invalid interpretation of the statute. While the statute grants jurisdiction only in cases in which the license holder is 'acting under the authority of his license,' the regulation also confers jurisdiction in cases where the license is only 'required in fact as a condition of employment.'
 
 
 6
 It is, of course, a 'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong * * *.' Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). However, it is also true that an administrative agency is a creature of statute, having only those powers expressly granted to it by Congress or included by necessary implication from the Congressional grant. See CAB v. Delta Air Lines, Inc., 367 U.S. 316, 322, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); Peters v. Hobby, 349 U.S. 331, 345, 75 S.Ct. 790, 99 L.Ed. 1129 (1955). The weight given to an interpretative regulation, such as the one at issue here, 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).
 
 
 7
 Courts will give extra authoritative weight to regulations which embody interpretations made contemporaneously with the enactment of the statute or which have been consistently followed for a long period. See Zuber v. Allen, 396 U.S. 168, 192-193, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); Alaska S.S. Co. v. United States, 290 U.S. 256, 262, 54 S.Ct. 159, 78 L.Ed. 302 (1933); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933); 1 K. Davis, Administrative Law Treatise 5.06, at 324-330 (1958); K. Davis, Administrative Law Treatise 5.06, at 263-264 (1970 Supp.).
 
 
 8
 The Commandant's condition-of-employment regulation, however, is not entitled to special deference on either of these grounds. The predecessor to46 U.S.C. 239 was first enacted more than 100 years ago. Act of Feb. 28, 1871, ch. 100, 19, 16 Stat. 447. Under that original act the Coast Guard was granted power to revoke or suspend the federal license of one who is 'acting under the authority of his license.' However, it was not until 1965 that the regulation challenged here, 46 C.F.R. 137.-01-35(a), was published. 30 Fed.Reg. 17106 (1965). In fact, Soriano himself was involved in another marine casualty in 1961, also while acting as a state pilot on Puget Sound. Before the new regulation had become effective, the hearing examiner held that even though Soriano could not have been piloting the vessel had he not held a federal license, he still was not 'acting under the authority of his license,' within the meaning of the statute, and, hence, the Commandant lacked jurisdiction to suspend Soriano's license. In re Soriano, 1965 A.M.C. 391 (1964).
 
 
 9
 We agree with Soriano that the regulation had the effect of expending the Commandant's authority beyond the statute into an area traditionally reserved to the states. Long ago Congress granted to the states the power to regulate pilots, except as Congress might otherwise provide. Act of Aug. 7, 1789, ch. 9, 4, 1 Stat. 54, codified at 46 U.S.C. 211. Congress has provided otherwise in only two cases: the states may not regulate pilots or pilotage on the Great Lakes, 46 U.S.C. 216-216i, nor may they regulate pilots or pilotage on inspected, machine-propelled, coastwise seagoing vessels, not sailing on register and not on the high seas, 46 U.S.C. 364. This case, however, involves the pilot of a foreign-flag merchant vessel. Title 46 U.S.C. 215 specifically states that nothing in title 52 of the Revised Statutes (which includes 46 U.S.C. 239) shall be construed to annul or affect the power of the states to regulate such pilots.
 
 
 10
 The Commandant's condition-of-employment regulation leads to precisely this result: it affects the power of the states to regulate pilots of foreign-flag, merchant vessels in state waters. We acknowledge that the state is free to eliminate this result. All Washington need do is abolish the requirement that an applicant for a state license must possess a valid federal license. Nonetheless, even though it chooses to require a federal pilot's license as a condition for the issuance of a state license, the state of Washington still might not wish to see its own pilots investigated and reprimanded for alleged misconduct while serving as compulsory pilots pursuant to state law.
 
 
 11
 A state pilot, not required to hold a federal license under any federal law, cannot be 'acting under the authority of his license' merely because his state happens to require a federal license as a prerequisite to the issuance of a state license. At the time of the collision, Soriano was acting under the authority of his state license, not his federal one. The Commandant's regulation, which purports to place state pilots under Coast Guard discipline, infringes upon an area specifically reserved by Congress for 185 years for regulation by the states and acknowledged by the Supreme Court for more than 120 years to be a subject of peculiarly local concern. See Cooley v. Board of Wardens of Port of Philadelphia, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851). The regulation is void.
 
 
 12
 We hold, therefore, that the Commandant had no jurisdiction to suspend Soriano's federal pilot's license for alleged misconduct while Soriano was acting as a pilot required by state law.
 
 
 13
 Reversed.
 
 
 
 [1]
 Rev.Code Wash.Ann. 88.16.090. Washington is at least unusual, and perhaps unique, in requiring a federal license as a condition to the issuance of a state license. Compare La.Rev.Stat. 34:948; N.J.Stat.Ann. 12:8-11 to 12:8-14; N.Y.Nav.Law 64; Or.Rev.Stat. 776.325; Pa.Stat. tit. 55, 44, none of which requires a federal license as a qualification for the issuance of a state license
 
 
 [2]
 The hearing examiner's opinion can be found at 1969 A.M.C. 2141, and is critically discussed in A. Parks, The Law of Tug, Tow and Pilotage 525-26 (1971). Although the Commandant affirmed the hearing examiner's decision, he rejected two aspects of his opinion: the examiner's statement that a federally issued license must be required of all state pilots, and the examiner's conclusion that the controlling statute was 46 U.S.C. 214 rather than 46 U.S.C. 239
 
 
 [3]
 The district court's opinion can be found at 1972 A.M.C. 1767