452 So.2d 54 (1984)
Alberto ARAUJO, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-1189.
District Court of Appeal of Florida, Third District.
May 22, 1984.
Rehearing Denied July 10, 1984.
*55 Joseph Beeler, Miami, and Holly R. Skolnick, for appellant.
Jim Smith, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
Before BASKIN, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The defendant appeals his convictions for trafficking in and unlawful sale of marijuana. Although we find that the evidence against the defendant was sufficient to sustain the convictions, it is hardly of such persuasive force to render harmless the prosecutor's closing argument comment on the defendant's failure to call a certain witness to corroborate the defendant's exculpatory explanation of his presence and actions at the time when and place where the marijuana was seized by the police. Accordingly, we reverse the convictions and remand the cause for a new trial.
*56 The applicable law is clear. An inference adverse to the defendant for his failure to call witnesses is not permitted unless "it is shown that the witnesses are peculiarly within the defendant's power to produce and the testimony of the witnesses would elucidate the transaction, that is, that the witnesses are both available and competent." Kindell v. State, 413 So.2d 1283, 1288 (Fla. 3d DCA 1982) (Pearson, J., concurring) (emphasis in text). See Graves v. United States, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); United States v. Blakemore, 489 F.2d 193 (6th Cir.1973); Gass v. United States, 416 F.2d 767 (D.C. Cir.1969); Lane v. State, 352 So.2d 1237 (Fla. 1st DCA 1977) (Rawls, J., dissenting), cert. denied, 362 So.2d 1054 (Fla. 1978).[1]Cf. Buckrem v. State, 355 So.2d 111 (Fla. 1978) (both prongs of rule satisfied); Jenkins v. State, 317 So.2d 90 (Fla. 1st DCA 1975) (same).
In the present case, the missing witness was Frank DiCamillo, who was originally joined as a defendant in the case. About two months before the commencement of Araujo's trial, DiCamillo entered a plea of guilty to the charges, was sentenced to a term of imprisonment, and ordered to surrender at a future date to begin serving his sentence. By the time of Araujo's trial, DiCamillo had failed to surrender as ordered and had become a fugitive from justice. DiCamillo's unavailability was, of course, well known to the prosecutor.[2]
Araujo testified on his own behalf. He explained that for a number of years until early in 1979, he had worked with DiCamillo running an automobile body shop. Thereafter, following brief employment at a similar operation, Araujo decided to open his own body shop and requested DiCamillo's help. Their discussions were interrupted when Araujo took a trip with his family. Upon Araujo's return, he contacted DiCamillo to resume the discussions. DiCamillo got back in touch with Araujo on May 11, 1979, and told Araujo that that evening he would be at the home of Mr. Howard (known by Araujo to be a good friend of DiCamillo) and that Araujo should meet DiCamillo there at 7:00 p.m. This, according to Araujo, is what brought him to the Howard home on the night of the marijuana raid.[3],[4]
*57 In his closing argument to the jury, the prosecutor argued the implausibility of Araujo's testimony:
"You know the Defendant's testimony that he gave from the stand. He said he went to the Jeffrey Howard home to discuss a business deal with Frank DeCamilla.[5] Do you remember that?
"You remember they were going to negotiate a business deal?
"Now, you know if you  if a fellow were going to discuss a business deal with Frank DeCamilla, he certainly might go to DeCamilla's place of business. He might go to his home. He might have Frank DeCamilla come to his own home. Why would he go to the Jeffrey Howard home?
"Frank DeCamilla doesn't have his books there. Why would he go there? And, I think the Defendant might have suggested in answer to us in that regard, ladies and gentleman [sic], because he said he went there  his own testimony  because he expected  I even wrote this down  expected Frank DeCamilla to provide some financing."
Defense counsel argued in response:
"He says, is it reasonable they would meet at Jeffrey Howard's house. Nobody said it had to be reasonable, whether it is a likely thing to do. He went to Mr. Howard's house, because he is trying to close a deal with Mr. DeCamilla. That is why he is at Mr. Howard's house, because that is where Mr. DeCamilla said to meet him.
"Are you going to put him in jail because Frank doesn't do business in his office?"
The prosecutor rebutted:
"If Frank DeCamilla is not just the sort of fellow that does business in his home, maybe that is so, and maybe not. Where is Frank DeCamilla?
"We both called witnesses. I called everybody I wanted."
The defendant objected and moved for a mistrial. The trial court overruled his objection and denied his motion for mistrial on the ground, urged by the State, that defense counsel's argument had "opened the door" to the State's remark. The State makes the same contention here with far less success.
The prosecutor argued to the jury the unlikelihood of Araujo meeting DiCamillo at Howard's house to discuss business. Defense counsel's rejoinder was simply that whether it was unlikely or not, Araujo said that is what he was doing there. Defense counsel's comment neither suggests that had DiCamillo been called, he would have corroborated the defendant's testimony, nor attempts to take advantage of DiCamillo's absence. The defendant's argument cannot therefore be said to have provoked the State's impermissible reply. Where a defendant testifies as to what another told him to establish his lack of knowledge or intent, the State, having argued that the defendant's story is unreasonable, will not be heard to say that the defendant, by thereafter arguing the reasonableness of his testimony, ipso facto, invites the State's "missing witness" reply. Thus, no door was opened to the State's pernicious comment.
It being undisputed in this record that DiCamillo, although presumably competent to testify, was not available,[6] it was error to overrule the defendant's objection to the State's comment, "Where is Frank DeCamilla? We both called witnesses. I called everybody I wanted." Because this comment inescapably invited the jury to infer that the reason the defendant did not call DiCamillo as a witness is that DeCamillo's testimony would not corroborate the defendant's (despite the fact, which the prosecutor *58 well knew, that the defendant was wholly incapable of procuring DiCamillo's attendance as a witness) and because the evidence against the defendant is far from overwhelming, the judgment is reversed and the cause remanded for a new trial.
Reversed and remanded.

ON MOTION FOR REHEARING
The Assistant Attorney General, in a motion for rehearing filed on behalf of the State, has the effrontery to tell us that in deciding this case we "overlooked" or "misapprehended" a critical fact, namely, that DiCamillo, whom we described in our opinion as a fugitive by virtue of not having surrendered to begin the service of his sentence, was not a fugitive at all, but was safely nestled in one of the State's correctional institutions at the time of Araujo's trial.
The transcript of trial in this case reflects that the prosecutor informed the court that "[s]hortly after he pled guilty, Mr. DiCamillo did not surrender himself to commence the sentence after the plea was taken." (emphasis supplied). Assuming, generously, that the Assistant Attorney General overlooked that statement when he first read it, surely its existence could not have been missed when the Assistant Attorney General read the appellant's initial brief, which, referring to the transcript, informed his adversary that
"the prosecutor himself had earlier informed the court that Mr. De Camillo was a fugitive (2/25 Tr. 46). Given that status, he certainly was not available to be called by the defense. The argument was improper and unfair."
Appellant's Initial Brief, p. 23.
Yet, in the face of this, the Assistant Attorney General filed a brief in which he announced his acceptance of the appellant's statement of the facts "as a substantially accurate account of the proceedings below" (Appellee's Answer Brief, p. 1) and at no time took issue with the fact appearing in the record, that is, that DiCamillo was a fugitive.
After appellant's reply brief arrived and informed us once again that "it is not fair reply to fault the defense for not calling a witness whom the prosecutor knows is a fugitive and unavailable to testify" (Appellant's Reply Brief, p. 5), there was no protest from the Assistant Attorney General. And when the fugitive status of DiCamillo was brought up time and again at oral argument of this case, the fact remained unchallenged by the Assistant Attorney General. We think, therefore, it is fair to say that any overlooking and misapprehending that occurred in this case was done by the Assistant Attorney General.
Our opinion in this case issued on May 22, 1984, nineteen days after oral argument. We recounted therein as a fact that:
"By the time of Araujo's trial, DiCamillo had failed to surrender as ordered and had become a fugitive from justice. DiCamillo's unavailability was, of course, well known to the prosecutor."
To the extent that the Assistant Attorney General had not previously overlooked this fact, but had apprehended it as a fact of little importance, his misapprehension was now brought home to him by our opinion.
The motion for rehearing alleges for the first time that the transcript of the trial upon which we relied is inaccurate and that DiCamillo was in fact not a fugitive. Quite apart from the fact that no effort to correct the transcript has ever been made below, it appears from the court reporter's affidavit (appended to the appellant's response to the State's motion for rehearing) that the transcript has been compared to the court reporter's notes and is absolutely accurate. It appears from an affidavit submitted by the Department of Corrections that DiCamillo was a prisoner in State custody at the time of Araujo's trial and that, therefore, the prosecutor's statement at trial to the contrary was erroneous. However, since DiCamillo's being in fact not a fugitive does not change the impropriety of the prosecutor's argument, see n. 6,[1a] and *59 his being a fugitive would serve only, as it did in our opinion, to exacerbate the unfairness of the argument, the Assistant Attorney General's belated effort to save this case from reversal must fail.
Accordingly, the State's motion for rehearing is denied. For the Assistant Attorney General's benefit, we add these words, written by another court on the occasion of being confronted with like behavior:
"This is not a case of a party caught in some manner by surprise... . For a governmental agency best familiar with its own practice with respect to a matter directly in issue, and now said to be of paramount importance, to make no mention of the subject until after it had lost the case on another ground, if deliberate, is a breach of duty to the court and, if inadvertent, is still inexcusable. The Commission's petition for rehearing raising this allegedly vital point contains no mention of why it was first developed at this late date, let alone any apology for so doing."

Carr v. Federal Trade Commission 302 F.2d 688, 692 (1st Cir.1962) (on rehearing).
The same holds true here.
Motion for rehearing denied.
NOTES
[1] The majority in Lane acknowledged this well-settled rule, but found its violation to be harmless error under the circumstances of the case.
[2] Indeed, all of the facts concerning DiCamillo's fugitive status were recited by the prosecutor to the trial judge at an early point in Araujo's trial.
[3] Araujo also explained that his act of opening the driveway gate to allow a truck to enter was done at the request of DiCamillo and without knowledge of the truck occupants' purpose. The occupants' purported purpose was to pick up a delivery of marijuana; their real purpose was to conduct a raid, seize the marijuana, and arrest everyone at the Howard house. Before the night of the raid, the police had never met or talked to Araujo, nor heard his name during the previous drug negotiations. It is clear, however, that when Araujo came to the house and entered the garage area, he saw the bales of marijuana and remained on the premises until the arrival of the police.
[4] Because this case must be retried, we note that the trial court correctly overruled the prosecutor's hearsay objections to Araujo recounting what DiCamillo said to him. Such testimony was not offered to prove the truth of the matter asserted by DiCamillo, but to show its effect upon Araujo and is thus admissible as non-hearsay. See, e.g., United States v. Jackson, 621 F.2d 216 (5th Cir.1980) (defendant's testimony concerning what he was told about purpose of bank loan offered to prove lack of knowledge in defense to making false entry); United States v. Herrera, 600 F.2d 502 (5th Cir.1979) (defendant's testimony concerning threats received admissible to establish claim of duress); United States v. Rubin, 591 F.2d 278 (5th Cir.), cert. denied, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979) (defendant's testimony that he had been told by present and past union presidents that union's constitutional procedures for obtaining salary increases did not have to be scrupulously followed admissible to establish defense to charge of taking unauthorized salary increases); United States v. Dunloy, 584 F.2d 6 (2d Cir.1978) (defendant's testimony as to what he was told as bearing upon whether he believed package contained valuables or securities rather than narcotics); United States v. Wellendorf, 574 F.2d 1289 (5th Cir.1978) (defendant's testimony concerning tax advice he received admissible to establish good faith); United States v. Carter, 491 F.2d 625 (5th Cir.1974) (defendant's testimony that cousin permitted him to use car and did not tell him it was stolen); United States v. Anost, 356 F.2d 413

(7th Cir.1966) (defendant's testimony concerning contents of phone conversations with codefendant which bore upon his explanation for possessing allegedly stolen goods).
[5] DiCamillo's name appears as DeCamilla throughout the transcript.
[6] Additionally, there is no showing in this record that DiCamillo, had he not been a fugitive, was peculiarly within the defendant's power to produce.
[1a] Even if DiCamillo was within the reach of a subpoena, he was not shown by this record to be available to either party, much less the defendant, where, as here, he might, if called, have invoked his privilege against self-incrimination and refused to testify. See United States v. Chapman, 435 F.2d 1245 (5th Cir.1970), cert. denied, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971). See also United States v. Seavers, 472 F.2d 607 (6th Cir.1973); Maristany v. State, 414 So.2d 206 (Fla. 3d DCA 1982) (a defendant's plea of guilty to a particular offense does not waive privilege of self-incrimination as to other offenses arising out of same transaction).