**AMERICAN PILOTS' ASSOCIATION, INC., Plaintiff,**

v.

**Admiral James S. GRACEY, U.S.C.G., et al., Defendants,**

**American Waterways Operators, Inc., Defendant-Intervenor.**

Civ. A. No. 85–2165.

United States District Court, District of Columbia.

Feb. 3, 1986.

---

Paul G. Kirchner, Washington, D.C., for plaintiff.

George Williams, Asst. U.S. Atty., Office of the U.S. Attorney Civ. Div., Washington, D.C., for defendants.

Austin P. Olney, Mindy A. Buren, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of the plaintiff, American Pilots' Association, Inc., for summary judgment; the motion of the federal defendants Admiral James S. Gracey, Commandant, U.S. C.G., the United States Coast Guard itself, Elizabeth Hanford Dole, Secretary of Transportation, and the United States Department of Transportation, for summary judgment; and the motion of defendant-intervenor American Waterways Operators, Inc., for summary judgment. Upon consideration of all the motions and the oppositions thereto, and plaintiff's reply, it is the conclusion of the Court that the United States Coast Guard acted within its statutory authority in promulgating the regulation codified in 46 C.F.R. § 157.20–.40 (1985), and that the Coast Guard did not act arbitrarily or capriciously in promulgating that regulation.

### Background

This case concerns the validity of a subsection of a final rule issued by the Coast Guard in rulemaking docket CGD 77–084, 50 Fed.Reg. 26,106 (1985) (codified in 46 C.F.R. § 157.20–.40), pursuant to the authority delegated to the Coast Guard by the United States Department of Transportation (DOT) to promulgate regulations implementing the various maritime statutes codified in Title 46 of the United States Code. *See* 49 C.F.R. § 1.46(n) (1984). The provision of the rule at issue (referred to hereinafter as the "Final Rule") specifies the requirements that must be satisfied for a licensed master, mate, or operator of a towing vessel to serve as a pilot on seagoing coastwise tank barge units of up to 10,000 gross tons, when underway, except on the high seas. Plaintiff challenges that provision of the Final Rule, contending that the rule (1) is contrary to statutory requirements and exceeds the Coast Guard's authority and jurisdiction, and (2) is arbitrary, capricious, and an abuse of discretion.[1]

### Statutory Requirements and Authority

The Coast Guard's authority as a delegate of the Secretary of Transportation, to issue licenses for one to operate as a master, mate, operator, or pilot is set forth in 46 U.S.C.A. § 7101(b) and (c) (1985). The general requirements for issuance of a pilot's license are specified in 46 U.S.C.A.

---

1. The Coast Guard also promulgated revised requirements for the issuance of a first class pilot's license (including a written examination and a chart-drawing test) and a license endorsement to a master's, mate's, or operator's license for a uninspected towing vessel. 50 Fed.Reg. 26,106, at 26,114–15 (to be codified in 46 C.F.R. subpart 10.07). Plaintiff does not challenge these provisions.

§ 7101(e) (1985). Pursuant to 46 U.S.C.A. § 8502(a) (1985), a coastwise seagoing vessel such as a tank barge must be "under the direction and control of a pilot licensed under section 7101" when underway, except on the high seas. There is no dispute that the operation of tank barges requires the services of a pilot meeting the § 7101 requirements. Plaintiff argues, however, that pilots authorized under the Final Rule do not qualify as pilots licensed under § 7101. Additionally, plaintiff argues that even if the authorized pilot category is viewed as a subcategory of licensed pilot, the Coast Guard had no authority under 46 U.S.C.A. § 3703 (1985) to promulgate the rule establishing this particular subcategory.

### A. Statutory Requirements for Licensed Pilots

Section 7101(e) sets forth the following minimum requirements that must be satisfied prior to the issuances of a pilot's license:

(e) An individual may be issued a license under subsection (c)(2) of this section only if the applicant—

(1) is at least 21 years of age;

(2) is of sound health and has no physical limitations that would hinder or prevent the performance of a pilot's duties;

(3) has a thorough physical examination each year while holding the license, except that this requirement does not apply to an individual who will serve as a pilot only on a vessel of less than 1,600 gross tons;

(4) demonstrates, to the satisfaction of the Secretary, that the applicant has the requisite general knowledge and skill to hold the license;

(5) demonstrates proficiency in the use of electronic aids to navigation;

(6) maintains adequate knowledge of the waters to be navigated and knowledge of regulations for the prevention of collisions in those waters;

(7) has sufficient experience, as decided by the Secretary, to evidence ability to handle any vessel of the type and size which the applicant may be authorized to pilot; and

(8) meets any other requirement the Secretary considers reasonable and necessary.

As the plaintiff correctly notes, a basic tenet of statutory construction is that when the language of a statute is unambiguous, the statute is to be interpreted literally, and the language itself is to be the essential source of the statute's meaning. *See, e.g., Consumer's Union of United States, Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir.1978). The Final Rule satisfies all but one of the § 7101 requirements without the necessity for looking beyond the statute. With respect to the last § 7101 requirement, the Court finds that the Final Rule satisfies it as well. So long as pilots authorized under the Final Rule satisfy the § 7101 standards, they may be considered to be a "pilot licensed under section 7101" for § 8502(a) purposes, regardless of whether they are characterized as "authorized" instead of "licensed" pilots.

Under the Final Rule, an individual holding a valid master's, mate's, or operator's license, within the limitations of his license, may serve as the licensed pilot of a coastwise, seagoing tank barge or a tank barge operating on the Great Lakes, not exceeding 10,000 gross tons, provided the individual:

(a) Has reached the age of 21 years;

(b) Complies with the currency of knowledge provisions of 46 C.F.R. § 10.-07–.13 required of first class pilots;

(c) Complies with the physical examination provisions of 46 C.F.R. § 10.-07–.09 required of first-class pilots;

(d) Has 12 round trips, over the route to be traversed, 25% of which must be made during the hours of darkness if the route is to be traversed during darkness, as an observer or under instruction in the wheelhouse; and

(e) Has at least six months' service in the deck department of towing vessels engaging in towing operations.

Each of the § 7101 criteria, save one, is manifestly satisfied under the Final Rule. Each is either included in the Final Rule, identical to the requirements of existing first-class pilots, or explicitly left to the Coast Guard's discretion.[2] The Final Rule requires the pilot to be 21 years of age, as does § 7101. The physical examination and currency of knowledge requirements are borrowed from those now required of first-class pilots, who clearly qualify as licensed pilots under § 7101. As a holder of a master's, mate's, or operator's license, the authorized pilot had to have demonstrated proficiency with navigational aids and familiarity with local maritime rules.

As to the requirements of experience and general knowledge, Congress specifically delegated to the Secretary, who in turn delegated to the Coast Guard, the power to determine what levels of these attributes were required. Where Congress delegates the interpretation of the statute explicitly, regulations adopted by the agency interpreting the statute's terms have legislative effect. Such regulations may be set aside only if the Coast Guard exceeded its statutory authority or if the regulation is arbitrary, capricious, an abuse of discretion, or not in accordance with law. *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977).

The Court addresses the issues of authority and arbitrariness later in this opinion. For now it is enough to recognize that the Final Rule's experience and general knowledge requirements necessarily meet the § 7101 standards, because § 7101 leaves those standards to the Coast Guard to determine.

The sole remaining requirement of § 7101, that the pilot's knowledge of local waters be "adequate," was not explicitly delegated to the Secretary. Therefore, the Coast Guard's regulatory interpretation of what constitutes "adequate knowledge" is not entitled to legislative effect. It is, however, entitled to some deference. The extent to which it is accorded deference is determined by "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if not to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The court in *Soriano v. United States*, 494 F.2d 681 (9th Cir.1974), noted that extra authoritative weight should be given to interpretations "made contemporaneously with the enactment of the statute or which have been consistently followed for a long period." *Id.* at 683.

Plaintiff argues that the Coast Guard's interpretation should be accorded little or no deference because it was promulgated long after the original statute and it departs from the prior interpretation of that statute. The Final Rule did come almost 50 years after the enactment of the Tank Vessel Act of 1936, Pub.L. No. 74–765, 49 Stat. 1889 (1936), which first established the requirement that tank barges be under the direction and control of licensed pilots. Plaintiff also asserts that the Final Rule radically departs from the Coast Guard's consistent interpretation that 46 U.S.C. §§ 364 and 391a, and their successor provisions, 46 U.S.C.A. §§ 3702 and 8502(a), require licensed pilots for all tank barges of greater than 1,600 gross tons.

The Court finds that the Coast Guard's interpretation is entitled to substantial deference because it is entirely consistent with the licensed pilot requirement. The Coast

---

**2.** The term "first-class pilot" refers to pilots currently licensed under § 7101 pursuant to 46 C.F.R. § 10.07. The term "first-class" is used herein merely to differentiate pilots already licensed under § 7101 and 46 C.F.R. § 10.07 from those who became licensed under § 7101 with the adoption of the Final Rule. The "first-class" terminology is somewhat misleading, as it refers to all pilots licensed before the Final Rule was adopted. The second-class pilots' license was eliminated by the Port and Tanker Safety Act of 1978, Pub.L. No. 95–474, 92 Stat. 1471 (1978) (codified as amended at 33 U.S.C. §§ 1221–31 (1982 & Supp. I 1983) and scattered sections of Title 46 of the U.S. Code (1985)), which raised the minimum age for pilots to 21 years. The "first-class" terminology was not eliminated because of its impact on state pilotage requirements. *See* 50 Fed.Reg. at 26,108.

Guard did not, as plaintiff suggests, promulgate the Final Rule as an exception to the licensed pilot requirement. Rather, the Coast Guard created a new subcategory of licensed pilot. It is true that in the past the Coast Guard has required a first-class pilot where a licensed pilot was indicated. *See Moran Maritime Associates v. United States Coast Guard,* 526 F.Supp. 335, 339–41 (D.D.C.1981), *aff'd,* 679 F.2d 261 (D.C.Cir.1982). However, in the past first-class pilots were the only licensed pilots available. The Coast Guard undoubtedly regarded the first-class pilot's knowledge of local waters as adequate, but that does not mean that some lesser or different showing of local knowledge might not also be regarded as adequate. The Court finds the local knowledge required under the Final Rule to be "adequate" for § 7101 purposes.

The Court, therefore, concludes that authorized pilots under the Final Rule satisfy the requirements for pilots licensed under § 7101. As such, they are qualified to pilot tank barge units not on the high seas which do not exceed 10,000 gross tons.

### B. *Statutory Authority*

Aside from the issue of whether authorized pilots meet the statutory requirements to be licensed pilots, plaintiff argues that the Coast Guard lacked the statutory authority to create this particular subcategory of licensed pilots at all. Plaintiff asserts that, in enacting 46 U.S.C.A. § 3703 (1985), Congress limited the Coast Guard's rulemaking authority and discretion.

46 U.S.C.A. § 3703 specifically authorizes the Coast Guard, as the delegate of the Secretary of Transportation, to issue rules concerning, *inter alia,* the pilotage of tank barges. Section 3703 provides, in pertinent part, that the Coast Guard shall prescribe regulations for the

> operation, ... personnel qualification, and manning of vessels to which this chapter applies, that may be necessary for increased protection against hazards to life and property, for navigation and

vessel safety and for enhanced protection of the marine environment.

Plaintiff argues that this provision limits the Coast Guard to rulemaking which furthers one of the above-specified goals.

Initially, it is important to note that the Final Rule was not promulgated under the rulemaking authority contained in 46 U.S.C.A. § 3703. Rather, it was promulgated pursuant to 46 U.S.C.A. § 7101(b), which allows the Coast Guard to issue and classify licenses "under regulations prescribed by the [Coast Guard]." Section 3703 is inapplicable to the case at hand.

Even if the Final Rule were promulgated under § 3703, § 3703 would not invalidate it. Section 3703 requires that the Coast Guard enact such rules as may be necessary to further certain safety and antipollution goals. It does not limit the Coast Guard's rulemaking authority to only those concerns.

Not only may the Coast Guard properly consider goals other than those specified in § 3703, it is required by Executive Order 12291 to consider precisely the type of cost/benefit analysis the Final Rule was intended to address. Executive Order 12291 directs all federal agencies to minimize regulatory costs to society, and to consider in their cost/benefit calculus the effect of the regulation on the industry involved. *See* Executive Order No. 12291, 46 Fed.Reg. 13,193 (1981).

Through implementation of the Final Rule, the Coast Guard seeks to reduce regulatory costs to the tank barge industry while maintaining safety in tank barge operations. The Court finds this rulemaking to be within the statutory authority delegated to the Coast Guard and to be mandated by Executive Order 12291.

### Arbitrary and Capricious Action

Plaintiff contends that even if the Coast Guard were within its statutory authority in promulgating the Final Rule, the Rule itself should be overturned as being arbitrarily and capriciously made. The Final Rule, as the product of an informal agency rulemaking subject to the notice and comment procedures of Section 4 of the Admin-

istrative Procedure Act (5 U.S.C. § 553), must be upheld by a reviewing court unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982); *Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 41, 103 S.Ct. 2856, 2865–66, 77 L.Ed.2d 443 (1983).

As plaintiff observes, the scope of judicial review of agency action under this standard is limited. A court may not substitute its judgment for that of the agency, *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971), and must affirm the action if there is a rational basis for it and it is within the agency's statutory authority. *Federal Security Administration v. Quaker Oats Co.,* 318 U.S. 218, 233, 63 S.Ct. 589, 597–98, 87 L.Ed. 724 (1943); *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C. Cir.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

The Court concluded above that the Coast Guard was within its statutory authority in promulgating the Final Rule. Plaintiff does not dispute the validity of the rulemaking procedure itself; the Coast Guard exceeded the minimum procedural requirements of the Administrative Procedure Act in developing a detailed factual record. Plaintiff argues instead that the facts in the record do not provide a rational basis for the Coast Guard's conclusions. The Court finds sufficient evidence in the record before it to support the Coast Guard's conclusions. As noted, the Court has no authority to second guess the Coast Guard's assessment of the evidence gathered during rulemaking so long as the evidence provides a rational basis for the agency's conclusions, as it does in this case.

Plaintiff also argues that the objective of the Final Rule, reducing pilotage cost to the towing industry, could be achieved without departing from the statutory requirement of a licensed pilot under 46 U.S.C.A. § 8502(a). As the Court determined above that the Coast Guard did not depart from that statutory requirement, this argument is moot.

Plaintiff's last argument concerns the rational relation of the Final Rule to the objectives of 46 U.S.C.A. § 8502(a). The Court finds that the Final Rule necessarily is rationally related to § 8502(a) because the Final Rule merely identifies a new category of pilots who possess the minimum qualifications needed to operate tank barges safely. The rule furthers the objective of § 8502(a) in ensuring the safe pilotage of tank barges while at the same time lowering costs to the tank barge industry. The Court discerns no inconsistency between the purpose of § 8502(a) and the rule.

In summary, the Court finds (1) that pilots authorized under the Final Rule meet the statutory requirements of § 7101 for licensed pilots, (2) that the Coast Guard did not exceed its statutory authority in enacting that rule, and (3) that the Coast Guard's decision to enact the rule was not arbitrarily or capriciously reached.

For the foregoing reasons, it hereby is

ORDERED, that the motion of the plaintiff for summary judgment is denied. It hereby further is

ORDERED, that the motions of the federal defendants and of the defendant-intervenor for summary judgment are granted.

SO ORDERED.